BOLIN, Judge.
This suit, predicated on Louisiana Civil Code Article 2315, arose out of an accident involving the family car driven by Mrs. Dieball which collided head-on with a vehicle driven by Willie Roberts and insured by Continental Casualty Company. Central Construction Company was engaged in repairing the street near the scene of the accident. Plaintiffs sued Roberts, his insurer and .Central Construction Company to recover damages for personal injuries suffered by Mrs. Dieball and related special damages sustained by the community, alleging Roberts’ negligence in the operation of his vehicle and Central’s improper placing of warning barricades were proximate causes of the accident. By means of a third party petition, Central made Trinity Universal Insurance Company, the insurer of the sub-contractor, a third party defendant. From judgment rejecting their demands plaintiffs appeal.
Since Central has neither appealed nor answered this appeal its demands against Trinity, by way of third party claims, are not before us. The sole question presented here is whether the lower court was correct in rejecting plaintiffs’ demands against Roberts, his insurer, and Central Construction Company.
Counsel for all parties concede there is little dispute over the facts, which we shall briefly relate.
The accident happened very soon after midnight, during the early morning hours of Christmas, 1962 near the intersection of Linwood Avenue and 70th Street in the City of Shreveport. Linwood Avenue runs generally north and south and 70th Street runs generally east and west. At the time of the accident 70th Street was being widened into a four-lane thoroughfare, but a portion of the project had not been completed.
Immediately preceding the accident Mrs. Dieball had been driving her automobile south on Linwood Avenue and it was her intention to turn right on 70th and proceed west along this street. However, as she approached the intersection she noticed several barricades from which she concluded her entrance into the westbound lane of 70th Street was blocked. There was at least one barricade placed in or in front of the median strip which divided 70th Street where concrete construction was being done. There was also a barricade placed on the northwest corner of the intersection of 70th Street and Linwood Avenue in front of a catch basin under construction. This latter barricade protruded slightly into the right or north lane of 70th Street but,- according to the evidence, there remained sufficient room for passage of vehicles proceeding west in the proper lane of travel. Mrs. Dieball was familiar with this crossing and testified that on prior occasions barricades had been placed entirely across the northern lane of 70th Street which necessitated traffic traveling west to go into the south lane, or that portion normally used for east *776 bound traffic. When Mrs. Dieball reached this intersection, thinking the north lane was blocked by the barricade, she proceeded across that portion of the street and entered the south lane, shifted the gears of her vehicle and started slowly west in the wrong lane of traffic.
She traveled a short distance in the extreme right portion, which at that point is actually a three-lane street allowing normal eastbound traffic a left turn lane at the intersection. She was reaching the end of the three lanes where the street narrows to two lanes when she noticed the lights of an approaching car. She testified she stopped her vehicle, blinked its lights and blew the horn in order to warn the oncoming motorist that she was in what would normally be the wrong lane of traffic. At this moment the Dieball car had reached the end of the widened section and was at a slight angle, throwing its headlights toward traffic approaching from the west in the eastbound lane of 70th Street. It was while her vehicle was at such an angle it was struck by the automobile driven by Roberts.
Roberts and his companion testified they noticed the lights of Mrs. Dicball’s vehicle only a short distance before the impact, but at first thought it was on the other side of the median strip. Roberts said when he first realized the car was on the wrong side of the street and angling toward him he turned his vehicle in order to avoid the accident, but being unsuccessful the head-on collision resulted.
Article 2315 of the Louisiana Civil Code provides in part as follows:
“Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * * *.”
Inasmuch as esteemed counsel have urged the applicability of such common-law doctrines as last clear chance, sudden emergency or discovered peril as well as a special plea of contributory negligence, we deem it appropriate to again remind ourselves that the basic and fundamental law of Louisiana is codal and statutory. We think the dangers inherent in unnecessarily going beyond the statutory law in determining cases was never more eloquently stated than by Judge Hardy, as the organ of this court, in the case of Hightower v. Dr. Pepper Bottling Company of Shreveport (La.App., 2 Cir., 1959) 117 So.2d 642, 654 on rehearing:
* * * * * *
“There seems to be a deal of misunderstanding and misconception on the part of members of both Bench and Bar with reference to the origin, nature and purpose of the statutory codal provisions contained in Article 2315. This article represents the very foundation upon which all tort law in Louisiana has been constructed; it provides the causes giving rise to tort actions and denominates the persons who possess the right to assert such causes of action, as well as the preferences among the different categories of such claimants. The article has no relation to the common law; derives none of its history or effect therefrom, and, therefore, is not susceptible of interpretation upon the basis of common-law principles. As was observed by Judge Drew of this court in Gott v. Scott, La.App., 199 So. 460, 463:
“ ‘The only liability for torts in this State is found in the provisions of the Code and statutes of the State. Text books are often referred to for the purpose of interpretation, but never as law creating a tort liability.’
“The articles written for the Tulane Law Review (Volume XVI, page 489, and XVII, page 159) by Dr. Ferdinand Stone, distinguished Professor of Law on the faculty of Tulane University, discuss, in a scholarly and convincing manner, the history, development and purpose of the tort doctrine in Louisiana. In the second of these articles *777 there appears the following observation, which we think should he borne in mind by all members of both Bench and Bar:
“ ‘As the number of decided cases in Louisiana has increased, lawyers and judges have been tempted to rely upon cases rather than upon the Code itself, with the inevitable result that the forest has oft been obscured by the trees.’
“We think the idea expressed could well be adopted as a guide, and we feel that its application will save us from floundering in the quagmire of minute distinctions and differentiations between cases and permit us to walk upon the firm ground of the unambiguous principles and purposes established by Article 2315.”
‡ * * * * *
After a careful review of this record, we have found it unnecessary to resort to evidentiary rules, common-law doctrines or prior decisions in concluding this accident was caused entirely by the fault or negligence of Mrs. Dieball in driving her vehicle on the wrong side of a four-lane highway.
It was not unreasonable for Roberts to have concluded he was faced with a head-on collision when he saw Mrs. Die-ball’s vehicle at an angle and almost upon him. We find Roberts was driving at a reasonable rate of speed, was keeping a proper lookout and had no reason to expect the presence of the Dieball car where it was. We conclude there was no negligence or fault on his part for his subsequent actions.
We agree with the finding of the district judge that Mrs. Dieball was unjustified in concluding there was insufficient room between the barricades on the northern portion of 70th Street for her to have proceeded in her proper lane of travel. City Police Officers testified the street was open to traffic in both lanes and that traffic had been flowing freely thereon during the night of the accident. Prom such observations, it also necessarily follows no fault has been shown on the part of Central Construction Company.
For the reasons stated the judgment appealed from is affirmed at appellants’ cost.
Affirmed.